## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PENNY POLAKOFF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| ORITANI FINANCIAL CORP., KEVIN J. | ) | |
| LYNCH, JOHN M. FIELDS JR., NICHOLAS | ) | |
| ANTONACCIO, JAMES J. DOYLE JR., | ) | |
| ROBERT S. HEKEMIAN JR., JOHN J. | ) | |
| SKELLY JR., HARVEY R. HIRSCHFELD, and | ) | |
| JUDITH SCHUMACHER-TILTON, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Penny Polakoff, by her undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Oritani Financial Corp. ("Oritani" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Oritani, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Oritani by Valley National Bancorp ("Valley").

2.      On June 25, 2019, Oritani and Valley entered into an agreement and plan of merger

1

(the "Merger Agreement"), providing for Valley's acquisition of Oritani, with Valley continuing as the surviving entity (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, Oritani's shareholders will be entitled to receive 1.60 shares of Valley common stock for each share of Oritani common stock they own, an estimated exchange rate of approximately $16.29 per share of Oritani common stock based on the closing price of Valley common stock on June 25, 2019, the last trading day before the public announcement of the Proposed Transaction (the "Merger Consideration").

4.      On or about August 30, 2019, in order to convince Oritani's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by Oritani's financial advisors, Keefe, Bruyette & Woods, Inc. ("KBW" or the "Financial Advisors") regarding the Proposed Transaction.

6.      The Proposed Transaction is expected to close in the Fourth Quarter of 2019 and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks.  Therefore, it is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting, so Plaintiff can properly exercise her corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Oritani's public common stockholders

sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.       Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Oritani's common stock trades on the Nasdaq Global Select Market exchange ("Nasdaq"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.       Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Oritani common stock.

12.     Defendant Oritani is a public company incorporated under the laws of Delaware, which acts as the stock holding company for Oritani Bank, a New Jersey chartered savings bank, which operates lending offices in New York City and Cherry Hill, New Jersey and has 25 branch offices located in the New Jersey counties of Bergen, Hudson, Essex, and Passaic.  Oritani's principal executive offices are located at 370 Pascack Road, Township of Washington, New Jersey 07676. Oritani's common stock is traded on the Nasdaq under the ticker symbol "ORIT."

13.     Defendant Kevin J. Lynch ("Lynch") is, and has been at all relevant times, the President and Chief Executive Officer of the Company, and the Chairman of the Company's Board of Directors.

14.     Defendant John M. Fields, Jr. ("Fields") is, and has been at all relevant times, the Executive Vice President and Chief Financial Officer of the Company, and a director of the Company.

15.     Defendant Nicholas Antonaccio ("Antonaccio") is, and has been at all relevant times, the Lead Director of the Company.

16.     Defendant James J. Doyle, Jr. ("Doyle") is, and has been at all relevant times, a director of the Company.

17.     Defendant Robert S. Hekemian, Jr. ("Hekemian"), is and has been at all relevant times, a director of the Company.

18.     Defendant John J. Skelly, Jr. ("Skelly") is, and has been at all relevant times, a director of the Company.

19.     Defendant Harvey R. Hirschfeld ("Hirschfeld") is, and has been at all relevant times, a director of the Company.

20.     Defendant Judith Schumacher-Tilton ("Schumacher-Tilton") is, and has been at all relevant times, a director of the Company.

21.     The Defendants identified in paragraphs 13 through 20 are collectively referred to

herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

22.     Oritani was incorporated under the laws of the State of Delaware in March 2010 as the successor to Oritani Financial Corp. ("Oritani-Federal"), a federal corporation and former stock holding company of Oritani Bank.  Oritani primarily engages in the business of holding the common stock of Oritani Bank and owns 100% of the outstanding shares of Oritani Bank common stock.

23.     Oritani Bank is a New Jersey-chartered savings bank headquartered in the Township of Washington, New Jersey that was originally founded in 1911 as a New Jersey building and loan association which has, over years, expanded through internal growth and business combinations. Oritani Bank conducts business from its corporate offices at 370 Pascack Road in the Township of Washington, New Jersey, lending offices in New York City and Cherry Hill, New Jersey, and its 25 branch offices located in the New Jersey counties of Bergen, Hudson, Essex, and Passaic, with the majority of its branches (eighteen) located in Bergen County.

24.     According to its most recent Form 10-K, as of June 30, 2019, Oritani had consolidated assets of $4.07 billion, consolidated deposits of $2.92 billion, and consolidated stockholders' equity of $529.1 million, and its consolidated net income for the fiscal year ended June 30, 2019 was $52.1 million.

25.     Prior to the announcement of the Proposed Transaction, Oritani had exceptional long-term prospects, with a solid, long-term strategy to ensure continued profitability rather than maximize short-term returns, which positioned Oritani especially well relative to its peers in the face of an increasingly uncertain economy.  As the Company announced in its April 22, 2019 Press Release entitled *Oritani Financial Corp. Announces Dividend and 3rd Quarter Results*:

"I am pleased to report the results for the quarter ended March 31, 2019," said Kevin J. Lynch, the Company's Chairman, President and CEO. "Oritani continues to navigate the challenges presented by today's operating environment, and still deliver strong results and profitability." Mr. Lynch continued: "While I would have preferred growth consistent with historical levels for Oritani, we remain mindful of the risks of aggressive expansion in this economy. I would prefer muted increases and solid profitability over robust growth at levels we may soon regret."

26.     Thus, the Proposed Transaction comes at a time when Oritani's recent and future success was not fully reflected by its share price. The Proposed Transaction will "compensate" Oritani stockholders with an amount of stock in the combined company that fails to adequately compensate them for the intrinsic value of their shares.

27.     Despite Oritani's intrinsic value and growth prospects, the Individual Defendants are agreeing to a merger that deprives Oritani's public stockholders of the ability to partake in the Company's individual growth and instead dilutes the value of their Oritani stock with a less valuable exchange of Valley stock. The Individual Defendants breached their fiduciary duties owed to the Company's stockholders by agreeing to the Proposed Transaction for the unfair Merger Consideration, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate Merger Consideration.

**Background of the Merger and the Announcement of the Proposed Transaction**

28.     During the period leading up to the announcement of the Proposed Transaction, Oritani and KBW discussed a potential strategic transaction with several potential counterparties other than Valley and executed several nondisclosure agreements with those parties, including: (i) Company A (signed January 2017), (ii) four unidentified potential counterparties (Fall 2017), and (iii) Company C (July 2018). The Registration Statement does not state whether these nondisclosure agreements included standstill provisions and, if so, whether those standstill provisions would "fall away" upon announcement of a strategic transaction with a third party or included "Don't Ask, Don't Waive" ("DADW") provisions.

29. In late 2017 through June 2018 the Company and KBW engaged in "substantive conversations" with Company B but those conversations stalled as a result of "the parties' inability to reach an agreement on certain material financial terms and Company B's level of interest in a potential transaction." Registration Statement 51. The Registration Statement does not state: (i) whether a confidentiality agreement and/or a standstill agreement were in place when the Company and Company B were engaging in these "substantive conversations" in late 2017 through June 2018, or (ii) the substance of the disagreements regarding the "material financial terms" of a potential transaction with Company B that contributed to the conversations stalling in June 2018.

30. During the summer of 2018, the Company and KBW engaged in discussions with Company C but these "discussions between Oritani and Company C were terminated shortly after the July 31, 2018 meeting as the parties were unable to agree on the general financial terms of a potential transaction and Company C's internal regulatory constraints appeared to limit the possibility of Company C receiving regulatory approval of a transaction between the two parties." Registration Statement, 51. The Registration Statement does not state: (i) whether the nondisclosure agreement between Company C and the Company was subject to standstill provisions and, if so, the material terms regarding termination of those standstill agreements, or (ii) the substance of the disagreements regarding the "general financial terms" that contributed to the termination of the Company's discussions with Company C in August 2018.

31. Throughout late 2018 and early 2019, KBW and Company B resumed their discussions regarding a potential acquisition but "Company B continued to defer taking steps towards a transaction." Registration Statement, 52. The Registration Statement does not state: (i) whether a confidentiality agreement and/or a standstill agreement were in place when the Company and Company B resumed these discussions in late 2018 through early 2019, (ii) the way in which "Company B continued to defer taking steps" in early 2019, or (iii) whether the discussions occurring

through "early 2019" continued through April 2019, when the executives for Valley and the Company agreed that a potential combination of Valley and Oritani "had financial merit" and Valley and Oritani executed a nondisclosure agreement.

32.     In early May 2019, Valley and Oritani "informally discussed an exchange ratio of 1.61 shares of Valley common stock for each share of Oritani common stock." Registration Statement 52. At a May 22, 2019 meeting between senior executive officers of Oritani and Valley, Valley made an initial non-binding indication of interest on May 22, 2019, proposing an all-stock transaction with a value of $16.45 per share based on a fixed exchange ratio of 1.60 shares of Valley common stock for each share of Oritani common stock. *Id.* Valley's senior executives further indicated that Valley "would be willing to increase the exchange ratio to 1.61," and that the proposal contemplated "one seat on the Valley Board of Directors post-merger for a current director of Oritani." Registration Statement, 52-53. The Registration Statement does not: (i) state the substance of Valley and Oritani's respective positions at the time they "informally discussed an exchange ratio of 1.61 shares of Valley common stock for each share of Oritani common stock" in early May 2019, (ii) identify the "senior executive officers from Oritani and Valley" at the May 22, 2019 meeting, or (iii) state whether Valley or Oritani discussed which current director of Oritani would occupy the seat on the combined company's board that was contemplated by the acquisition proposal.

33.     Working from this initial indication of interest, on June 24, 2019, "the parties reached an agreement on the outstanding terms of the merger agreement and related items, including an agreement to an exchange ratio of 1.60. Valley had requested a return to the 1.60 exchange ratio due to, among other things, the changes in the stock prices of both Valley and Oritani." Registration Statement, 54. On June 25, 2019, the Board met to consider the approval of the Proposed Transaction and "unanimously determined that entering into the merger agreement and the other related agreements with Valley was advisable was in the best interests of Oritani and its shareholders, and

the directors unanimously approved the merger agreement and unanimously determined to recommend that Oritani's shareholders approve the merger and adopt the merger agreement," Oritani and Valley executed the merger agreement.  Registration Statement, 54-55.

34.    On June 26, 2019, Oritani and Valley issued a joint press release announcing the Proposed Transaction prior to the opening of trading markets:

> VALLEY NATIONAL BANCORP TO ACQUIRE ORITANI FINANCIAL CORP. IN CAPITAL ACCRETIVE TRANSACTION
>
> Company Release – 6/26/2019 8:15 AM ET
>
> WAYNE, N.J. and TOWNSHIP of WASHINGTON, N.J., June 26, 2019 (GLOBE NEWSWIRE) -- In a merger of two banks with a similar focus on the densely populated northern New Jersey markets, Valley National Bancorp ("Valley") **(NASDAQ:VLY)** announced today that it is doubling its market share in demographically attractive Bergen County and enhancing its presence in Hudson County by acquiring Oritani Financial Corp. ("Oritani") **(NASDAQ: ORIT)**.
>
> The companies have entered into a merger agreement in which the common shareholders of Oritani will receive 1.60 shares of Valley common stock for each Oritani share they own. The transaction is valued at an estimated $740 million, based on Valley's closing stock price on June 25, 2019.
>
> Valley, and its wholly-owned subsidiary, Valley National Bank, has approximately $32.5 billion in assets, $25.4 billion in loans, $24.9 billion in deposits and more than 200 branches in New Jersey, New York, Florida and Alabama.
>
> Oritani, and its wholly-owned subsidiary, Oritani Bank has approximately $4.1 billion in assets, $3.5 billion in loans, $2.9 billion in deposits, and maintains a branch network of 26 offices.
>
> The acquisition represents a significant addition to Valley's New Jersey franchise, and will meaningfully enhance its presence in the densely populated and affluent Bergen County market.  The acquisition will also bolster capital, providing greater balance sheet optionality and the acceleration of previously disclosed strategic initiatives.
>
> Ira Robbins, Valley's President & CEO commented that, "Oritani's conservative credit culture, combined with their customer focus should mesh seamlessly with that of Valley and our vision forward."  He also stated, "I want to thank Kevin Lynch and his entire Oritani team for being responsible stewards of the franchise and balance sheet during his tenure. This capital-enriching transaction will enable Valley to continue to focus on improving the growth profile throughout its entire franchise, while providing enhanced products, services and delivery channels to Oritani's existing customer base.  We are excited about this in-market combination and the synergies that it will bring us."

Kevin Lynch, Chairman, President & CEO of Oritani said, "We are thrilled about this combination with Valley.  The infrastructure that has been assembled at Valley over the past few years will enable our customers to access a substantial product offering while still receiving the local decision making and the exceptional service they have become accustomed to at Oritani." Mr. Lynch is expected to join the Boards of Directors of Valley and Valley National Bank upon completion of this transaction.

The combined company at close is expected to have approximately $38 billion in assets, $30 billion in loans, $29 billion in deposits, and 245 branches across New Jersey, New York, Florida, and Alabama.

The Boards of Directors of both companies, after extensive review and due diligence, unanimously approved the transaction.  The acquisition is expected to close late in the fourth quarter of 2019, subject to standard regulatory approvals, shareholder approvals from Valley and Oritani, as well as other customary conditions.

In conjunction with the closing of this transaction, Valley is planning on restructuring approximately $635 million of higher cost FHLB borrowings.  Valley anticipates the result of the merger, combined with debt restructuring will be immediately neutral to slightly accretive to earnings per share and tangible book value while increasing Tier 1 Common Equity by over 50 basis points.

Combination of Strong Banks with Significant Overlapping Presence

The transaction with Oritani is expected to substantially enhance all capital levels, allowing for a continuation of accelerated growth at Valley and providing an additional buffer for other forms of potential capital returns in the future.  While we currently estimate 50% cost-savings, in addition to those related to legacy Oritani benefit plans, there has been no assumption of expense synergies due to branch closures, despite Valley and Oritani having 100% of their respective branches within a 3-mile radius of a competing branch. Valley has a track record of integrating mergers designed to minimize customer disruption, and deliver profitable growth while maintaining strong credit quality and a well-capitalized balance sheet.  Selected data for the combined entity, on a pro-forma basis as of March 31, 2019, include:

- Approximately $37 billion in assets
- Approximately $29 billion in loans
- 245 branches, including 151 in northern and central New Jersey, 38 in Manhattan, Brooklyn, Queens and Long Island, 41 in Florida, and 15 in Alabama

Transaction Summary

Under the terms of the definitive agreement signed by the companies, each Oritani shareholder will receive 1.60 shares of Valley common stock for each share of Oritani common stock they own. Oritani's normal quarterly cash dividend policy for the period ended June 30, 2019 (typically paid in August) will not be impacted by this transaction. However, any subsequent quarterly dividends declared by Oritani will be limited to the current rate paid by Valley, exchange adjusted to $0.18 per common until the close of the merger.

The following are selected terms and metrics associated with the transaction based upon current projections, including the proposed refinancing of FHLB borrowings:

- Purchase price represents a fixed 1.60x for 1 exchange ratio
- Total transaction value of approximately $740 million
- Price to 2020 Fully Synergized EPS of 9.8x
- Price to tangible book value of 1.4x
- Tangible book value accretion of 0.0%
- Anticipated to be accretive to earnings in 2020, including FHLB restructuring

J.P. Morgan Securities LLC acted as financial advisor to Valley to provide a fairness opinion to Valley National Bancorp's Board of Directors. The law firm of Day Pitney LLP acted as counsel to Valley.  Oritani was advised by the investment banking firm of Keefe, Bruyette & Woods, a Stifel Company, and the law firm of Luse Gorman, PC.

**The Preclusive Deal Protection Devices**

35.     To the detriment of the Company's shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

36.     Section 5.3 of the Merger Agreement is a restrictive "no-shop" provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

37.     Section 5.3(a) of the Merger Agreement strictly prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations

38.     Sections 5.3(c) of the Merger Agreement requires the Board to provide Valley with written notice of any Acquisition Proposal within two (2) business days of its receipt.  Sections 5.03(b) likewise require the Board to provide prior written notice of at least two (2) business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Valley following Valley's receipt of the Notice of Superior Proposal, so that Valley has the opportunity to adjust the terms and conditions of the Merger Agreement so that the Acquisition

Proposal ceases to be a Superior Proposal.

39.     In addition, the Merger Agreement provides that the Company will be required to pay to Valley a termination fee of $28,000,000.00 with respect to any termination under the No-Shop provisions of the Merger Agreement.

40.     Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public stockholders' ability to disapprove the Proposed Transaction.  The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

41.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**The Registration Statement Omits Material Information**

42.     On or about August 30, 2019, in order to convince Oritani's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Registration Statement with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

43.     The special meeting of Oritani stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

44.     Specifically, the Registration Statement omits two types of material information: (i)

information regarding the background of the transaction and the Individual Defendants' potential conflicts of interest, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

**A. The Registration Statement Omits Material Information Regarding the Background of the Transaction**

45.      Regarding the nondisclosure agreements entered by the Company, the Registration Statement fails to disclose whether these nondisclosure agreements included standstill provisions and, if so, whether those standstill provisions would "fall away" upon announcement of a strategic transaction with a third party or included "Don't Ask, Don't Waive" ("DADW") provisions.  This information is material to a shareholder deciding how to vote on the Proposed Transaction because standstill and DADW provisions artificially deflate the Company's value by severely restricting other potential counterparties from attempting to acquire the Company.

46.      Regarding the Company's negotiations with Company B, the Registration Statement fails to disclose: (i) whether the Company and Company B ever entered  confidentiality agreement and, if so, whether that confidentiality agreement included a standstill provision, (ii) the substance of the disagreements between the Company and Company B regarding the "material financial terms" of a potential transaction between the Company and Company B that contributed to conversations stalling out in August 2018, (iii) the ways in which "Company B continued to defer taking steps towards a transaction," (iv) whether it was the Company or Company B who called off discussions in "early 2019," and (v) whether the discussions occurring through early 2019 continued through April 2019, when the executives for Valley and the Company agreed that a potential combination of Valley and Oritani "had financial merit" and Valley and Oritani executed their first nondisclosure agreement.  This information is material to shareholders deciding how to vote on the Proposed Transaction because Company B was one of the few potential counterparties that could have made a

competitive acquisition proposal and thus whether Company B remains subject to a standstill agreement and the circumstances under which the Company stopped negotiating with Company B are material to investors trying to determine whether the Merger Consideration is adequate.

47.     Regarding the Company's negotiations with Company C, the Registration Statement fails to disclose the substance of the disagreements regarding the "general financial terms" that contributed to the termination of the Company's discussions with Company C in August 2018.  This information is material to shareholders deciding how to vote on the Proposed Transaction because Company C was one of the few potential counterparties that could have made a competitive acquisition proposal and thus whether Company C remains subject to a standstill agreement the circumstances under which the Company stopped negotiating with Company C are material to investors trying to determine whether the Merger Consideration is adequate.

48.     Regarding the May negotiations between Valley and Oritani, the Registration Statement fails to disclose: (i) the substance of Valley and Oritani's respective positions at the time they "informally discussed an exchange ratio of 1.61 shares of Valley common stock for each share of Oritani common stock" in early May 2019, (ii) the identities of the "senior executive officers from Oritani and Valley" at the May 22, 2019 meeting at which Valley presented the initial indication of interest that ultimately formed the backbone of the Proposed Transaction, and (iii) whether Valley or Oritani discussed which current director of Oritani would occupy the seat on the combined company's board that was contemplated by the acquisition proposal.

**B.   The Registration Statement Omits Material Information Regarding the Financial Advisors' Fairness Analysis**

49.     The Registration Statement also omits material information regarding KBW's Fairness Opinion and the various valuation analyses that KBW performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the

existence of, or basis for, the underlying assumptions that underpin the fairness opinion.  Specifically, the Registration Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations, and KBW's potential conflicts of interest. Without this information, stockholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion.  The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them.  Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

50.    With respect to the management projections, the Registration Statement fails to disclose material information.  With respect to these financial projections, directors are obligated to provide complete valuation metrics to shareholders, particularly in cash-out transactions where non-GAAP metrics were used by the banker, since such metrics are not uniformly defined and shareholders are therefore unable to assess the utility and legitimacy of the actual metrics without seeing the underlying components.

51.    Notably, the Registration Statement fails to provide cash flow projections for the standalone companies and the pro forma combined company entirely, instead providing projections of Valley's and Oritani's standalone Net Income, Earnings Per Share, Total Assets, ROATCE, and ROAA, along estimates of (i) approximately $22 million of annual pre-tax cost savings (synergies) expected from the merger during the first 12 months after the closing of the merger and with 3% growth in annual cost savings to be realized thereafter, and (ii) approximately $39 million of pre-tax restructuring costs expected to result from the merger.  Further, the Registration Statement fails to disclose the Company's rationale and basis underlying its projections.

52.    Regarding KBW's *Oritani Selected Companies Analysis* beginning on Page 71 and *Valley Selected Companies Analysis* beginning on Page 73, the Registration Statement fails to

disclose the individual financial metrics for each of the selected companies and further fails to disclose KBW's rationale for excluding merger targets and mutual holding companies from its analysis. Without this information, it is impossible to determine whether KBW included outlier companies that should not have been selected, and it is impossible for the Company's public shareholders to replicate the analysis after removing these outliers. *Cf., In re PNB Hldg. Co. S'holders Litig.*, 2006 Del. Ch. LEXIS 158, at *96 n.125 (Del. Ch. Aug. 18, 2006) (rejecting comparable companies analysis where the "comparable publicly-traded companies all were significantly larger than [the subject company], with one having total assets of $587 million as compared to [the subject company's] assets of $216 million"). Indeed, the financial metrics provided suggest that the companies that KBW selected may not have been comparable at all in light of Oritani's significantly better rate of nonperforming assets as relating to Oritani's long-term strategy of ensuring continued profitability rather than maximizing short-term gains, which may be especially important in a changing economic climate with a possible recession on the horizon.

53.     Regarding KBW's *Selected Precedent Transactions Analysis* beginning on Page 74, the Registration Statement fails to disclose the multiples for each transaction. Again, the failure to disclose the relevant information regarding the individual transactions themselves is material to investors deciding how to vote on the Proposed Transaction because it makes it impossible for investors to determine whether KBW included outlier transactions and then re-perform the analysis after removing those outliers. Further, the *One-Day Market Premium* analysis fails to disclose whether and, if so, how KBW accounted for the possibility that part of the transaction premium had already been baked into the "background" stock price prior to the announcement of a transaction, for example due to a "jump" in stock price that occurred after a company announced that it was anticipating a merger before any merger was, in fact, finalized. *See, e.g., In re Columbia Sec. Litig.*, 155 F.R.D. 466, 483 (S.D.N.Y. 1994) ("The fact that Columbia stock jumped 25 percent when

Columbia finally announced in September 1989 that it was engaged in acquisition discussions with an unannounced suitor is convincing evidence that whatever 'acquisition expectations' were previously built into Columbia stock before this date were less than fully confident ones.").  All of this information is material to shareholders and the comparison of the Proposed Transaction to the precedent transaction quartiles without disclosing the information specific to each transaction renders the Registration Statement false and misleading.

54.     Regarding KBW's *Financial Impact Analysis* on Page 77, the Registration Statement omits entirely the pro forma assumptions that were analyzed and the projected quantitative impact derived from its analysis, and instead boils the analysis down to blanket statements that "the merger could be dilutive to Valley's estimated 2020 EPS and estimated 2021 EPS and could be accretive to Valley's estimated tangible book value per share as of December 31, 2019.  Registration Statement, 87.  The amounts of these projected financial impacts is material information that directly implicates the adequacy of the Merger Consideration.

55.     Regarding KBW's *Discounted Cash Flow Analyses* ("DCF") beginning on Page 87 and Page 88, the Registration Statement omits the projected unlevered after-tax free cash flows on which the entire analysis was based, which renders the analysis misleading and insufficient.  *See, e.g., In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 177 (Del. Ch. 2007).  Without the disclosure of the "publicly available consensus street estimates" for the projected cash flows that KBW relied on, it is impossible to determine whether KBW's analysis assumed artificially low cash flows for Oritani and artificially high cash flows for Valley in order to obtain a "fair" result.  Further, the Registration Statement fails to disclose KBW's rationale for: (i) assuming that Oritani would maintain a common equity to tangible asset ratio of 9.00% and that Valley would maintain a common equity to tangible asset ratio of 7.25%, (ii) applying a range of terminal multiples of 11.0x to 13.0x to each company's estimated 2025 net income, and (iii) applying a discount range of 8.5% to 10.5%

for Oritani and a discount range of 9.0% to 11.0% for Valley.

56.     If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest.  The question is not simply whether there is a duty to speak, but also whether there may be liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).   Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information.   Thus, Defendants' omission renders the projections disclosed in the Registration Statement misleading.

57.     Further the Registration Statement states that "KBW acted as (i) financial advisor to Valley in connection with its January 2018 acquisition of USAmeriBancorp, Inc. and (ii) book-running manager in Valley's July 2017 registered offering of preferred stock," but fails to disclose how much Valley actually paid KBW for these services.   Oritani's public shareholders cannot properly evaluate how they should consider KBW's Fairness Opinion in light of the conflicts of interest implicated by KBW's prior services to Valley without knowing the extent of the conflict, *i.e.,* the amount that Valley actually paid KBW for those services.

58.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.   Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to

vote her shares in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

61.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

62.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

63.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial

19

Advisors in support of its fairness opinion.

64.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

65.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures

followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

66.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

67.     The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

68.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

73.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their

acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

76.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.    Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 6, 2019

**MONTEVERDE & ASSOCIATES PC**

By:   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ADEMI & O'REILLY, LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
        jfruchter@ademilaw.com

*Attorneys for Plaintiff*